# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELIZABETH PINEGAR,** | : | **CIVIL ACTION NO. 1:07-CV-0313** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **ERIC K. SHINSEKI**, | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Plaintiff Elizabeth Pinegar ("Pinegar"), a former employee of the Department of Veterans Affairs ("VA"), brings this action pursuant to § 501 of the Rehabilitation Act of 1973 ("Rehabilitation Act" or "RA"), 29 U.S.C. § 791 et seq. Pinegar alleges that defendant, the Secretary of Veterans Affairs,[1] unlawfully failed and refused to make reasonable accommodations for her disability and that her subsequent retirement was a constructive discharge. Presently before the court is defendant's motion for summary judgment (Doc. 26). For the reasons that follow, the motion will be denied.

## I. Statement of Facts and Procedural History[2]

In June of 1998, plaintiff was hired as a program assistant for the VA's Memorial Program Service in Lebanon, Pennsylvania. (Doc. 27 ¶ 3; Doc. 55 ¶ 3.)

---

[1] When Pinegar filed suit, R. James Nicholson was the Secretary of Veterans Affairs. Later, Eric K. Shinseki succeeded Nicholson in that office, and Shinseki was substituted as the named defendant.

[2] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiff, the nonmoving party. See infra Part II.

Plaintiff processed applications for a program under which a deceased veteran could qualify for government funds for the veteran's headstone or grave marker in a private cemetery. (Doc. 27, Ex. A at 41; Doc. 27 ¶ 6; Doc. 55 ¶ 6.) To process these applications, plaintiff entered data on a computer. (Doc. 27, Ex. A at 42; Doc. 27 ¶ 6; Doc. 55 ¶ 6.) When plaintiff received applications that were deficient in some respect, she would search for the missing information on her computer or contact funeral homes or applicants' relatives—usually by phone, or through correspondence if necessary. (Doc. 27, Ex. A at 41-42; Doc. 27 ¶ 7; Doc. 55 ¶ 7.) Plaintiff sporadically communicated with her supervisor, (Doc. 27, Ex. A at 43-44), but her job did not generally require her to meet with her coworkers, except when she trained incoming employees, (Doc. 27, Ex. A at 44).

Plaintiff was diagnosed with breast cancer in July of 2004. (Doc. 41, Ex. G at 2.) She underwent a right radial mastectomy and lymph node resection in September of 2004. (Doc. 41, Ex. G at 2.) Plaintiff has lymphedema as a result of the removal of her lymph nodes, and it causes swelling of her right hand and right arm. (Doc. 1 ¶ 9.) After completing chemotherapy in March of 2005 and radiation therapy in May of 2005, (Doc. 41, Ex. G at 3), plaintiff commenced a five-year course of drug therapy treatment, (Doc. 1 ¶ 8). As a result of her drug therapy, plaintiff experiences severe joint and muscle pain, and she fatigues easily. (Doc. 27, Ex. A at 15-24.) These medical conditions require plaintiff to rest, and they prevent plaintiff from driving to her regular work site at the VA Medical Center. (Doc. 27, Ex. A at 15-16, 20-24.)

At the suggestion of her direct supervisor, Jim Flanagan ("Flanagan"), plaintiff agreed to work from home as an accommodation for her medical needs. (Doc. 41, Ex. G at 3; Doc. 27, Ex. A at 77:12-14.) In December of 2004 and January of 2005, plaintiff worked from home, with modified duties. (Doc. 27 ¶¶ 24-25; Doc. 55 ¶ 25.) She processed a backlog of applications for Presidential Memorial Certificates, and she processed only "clean" applications, which required no phone calls or letters to find missing information.[3] (Doc. 41, Ex. G at 3; Doc. 27, Ex. A at 83, 99.) After the backlog was eliminated in January 2005, plaintiff requested that Lindee Lenox ("Lenox"), the acting director for the VA's Memorial Program Service, terminate her assignment to work from home; plaintiff advised Lenox that she planned to return to work, but she was equivocal about the time of her return. (Doc. 27 ¶¶ 30-31; Doc. 27, Ex. A at 121, 132; Doc. 27, Ex. J.) She stated that she was "considering returning to the office" as early as February 7. (Doc. 27, Ex. J.) However, she also stated that she might wait "until the end of March," as she had already submitted a request for an extension until that time. (Doc. 27, Ex. I; Doc. 27, Ex. J.)

On March 2, 2005, plaintiff notified Lenox of her intention to return to work on March 21, pursuant to her doctor's orders. (Doc. 27 ¶ 34; Doc. 27, Ex. A at 132-33;

---

[3] The VA assigned plaintiff to process only "clean" applications for Presidential Memorial Certificates—certificates signed by the President and given to the families of deceased veterans in recognition of the veteran's service. (Doc. 27, Ex. A at 83, 99.) Plaintiff's modified duties were otherwise the same as her prior duties, to wit: she entered data from applications on a computer.

3

Doc. 27, Ex. K.)  She asked Lenox if she could work under a different supervisor, because her working relationship with Flanagan had deteriorated, and she had already contacted an Equal Employment Opportunity ("EEO") counselor regarding a hostile work environment claim.  (Doc. 27 ¶ 34; Doc. 27, Ex. K; Doc. 41, Ex. A.) George Corsoro ("Corsoro"), a VA employee who worked in the area of Human Resources, contacted plaintiff to discuss the situation.  (Doc. 27, Ex. L.)  On March 17, he notified plaintiff that she was approved to work at home, with modified duties,[4] beginning March 21.  (Doc. 21, Ex. L.)

Plaintiff filed an administrative complaint on April 5, 2005.  (Doc. 41, Ex. A.) Plaintiff complained that Flanagan created a hostile work environment[5] and discriminated against her on the basis of her disability and her age.  She also complained of discriminatory denial of pay, claiming that she was charged leave for days that she had worked.  (Id.)  Plaintiff and the VA settled this complaint in an agreement dated June 20, 2005.  (Doc. 41, Ex. D.)  According to the terms of the settlement agreement, the VA allowed plaintiff to work from home until August 31, 2005.  (Id.)  It also agreed to assist her in "apply[ing] for medical disability from her

---

[4] Plaintiff returned to her previous duties processing applications for veterans' grave markers.  Again, plaintiff's directive was to process only "clean" applications.  (Doc. 27, Ex. A at 140.)

[5] Plaintiff's allegations against Flanagan include, *inter alia*, the following: he allegedly solicited statements from plaintiff's coworkers regarding their thoughts and fears about plaintiff returning to work, (Doc. 41, Ex. G at 3), and he called the VA police to complain that plaintiff had threatened him, (Doc. 41, Ex. G at 3; Doc. 27, Ex. A at 132).

current position" and to "explore the possibility of an available position within the Lebanon Medical Center . . . ." (Id.) The agreement stated that the VA had no further obligation to provide plaintiff with reasonable accommodations. (Id.) If all options failed, plaintiff would be required to return to work on September 1, 2005, or she could choose to resign. (Id.)

On August 23, 2005, Corsoro, who was then serving as acting Chief of Operations, notified plaintiff by letter that she would have to return to work on September 1, 2005. (Doc. 27 ¶ 49; Doc. 27, Ex. V.) Plaintiff requested to continue working from home,[6] but Corsoro denied this request. (Doc. 55 ¶¶ 50-51; Doc. 41, Ex. G at 3-4; Doc. 27 ¶ 51.) On September 2, plaintiff requested 240 hours of advanced sick leave or leave without pay ("LWOP"). (Doc. 27, Ex. Y.) Flanagan denied plaintiff's request for advanced leave on September 7, (Doc. 27 ¶ 54), but granted her LWOP status until September 17, (Doc. 27, Ex. Z). After plaintiff could no longer be carried on LWOP status, she would be reported as absent without leave ("AWOL") if she did not return to work. (Doc. 41, Ex. G at 4.) Plaintiff's LWOP status was ultimately extended a bit longer, but plaintiff was on AWOL

---

[6] The record contains conflicting evidence as to whether plaintiff sought to work from home as an accommodation for her disabilities or as a result of her difficulties with Flanagan. Defendant claims that plaintiff asked to work at home because she refused to work with Flanagan. (Doc. 27 ¶ 50.) Plaintiff admits that she made reference to "the constant abuse I have taken over the years by Mr. Flanagan and his staff" in an email she sent to Corsoro, and that she stated, "I will not subject myself to that kind of abuse by any manager ever again." (Doc. 27 ¶ 50; Doc. 55 ¶ 50.) However, plaintiff asserts that, during a telephone conversation, she informed Corsoro that side effects from her cancer medication prevented her from returning to the office, and she asked to work at home as an accommodation. (Doc. 55 ¶ 50.)

status from October 1 to October 15, 2005. (Id.) Plaintiff also requested to participate in the Voluntary Leave Transfer Program. (Id.; Doc. 27, Ex. A at 183-84.) This request was initially denied on October 19, 2005, (Doc. 41, Ex. G at 4), but subsequently granted in December 2005, (Doc. 27, Ex. SS).

In the meantime, plaintiff contacted another EEO counselor and applied for disability retirement. (Doc. 41, Ex. E; Doc. 41, Ex. G at 4.) On December 21, 2005, plaintiff filed her second formal administrative complaint, alleging discrimination based on disability, age, and reprisal for filing her previous complaint. (Doc. 41, Ex. E.) Plaintiff complained of her employer's failure to accommodate her disability, as well as harassment and a hostile work environment. (Doc. 41, Ex. E.) On January 10, 2006, the VA's Office of Resolution Management ("ORM") accepted this claim "for investigation and further processing." (Doc. 41, Ex. F.) The ORM assigned the complaint to an investigator, and after the investigative process was complete, it provided plaintiff with a copy of the file and an opportunity to request a final agency decision from the Office of Employment Discrimination Complaint Adjudication ("OEDCA"). (Id.) Meanwhile, on April 26, 2006, the Office of Personnel Management approved plaintiff's application for disability retirement, (Doc. 41, Ex. G at 5), and plaintiff retired, with an effective retirement date of September 30, 2005, (Doc. 27 ¶ 62). During supplemental investigation of plaintiff's second administrative complaint, a claim of constructive discharge was added. (Doc. 41, Ex. G at 2.) On January 18, 2007, the OEDCA issued its final agency decision, concluding that plaintiff failed to prove that she was discriminated against

as alleged in her second administrative complaint. (<u>Id.</u> at 27.)

Plaintiff filed the instant suit on February 19, 2007, alleging that her retirement from the VA was a constructive discharge resulting from defendant's failure to make reasonable accommodations for her disability, in violation of the RA. (Doc. 1.) Defendant thereafter filed a motion for summary judgment (Doc. 26) asserting that plaintiff failed to timely exhaust administrative remedies and failed to make out a *prima facie* case of discrimination. The parties have fully briefed these issues, which are now ripe for disposition.

## II. <u>Standard of Review</u>

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality. <u>See</u> FED. R. CIV. P. 56(c). It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. <u>Pappas</u>, 331 F. Supp. 2d at 315.

## III.  Discussion

Plaintiff contends that the VA, her former employer, violated § 501 of the RA and constructively discharged her by failing and refusing to accommodate her disability.  The Rehabilitation Act is applicable to federal employers, and it is, in many respects, the functional equivalent of the Americans with Disabilities Act ("ADA").  It "forbids employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement."  Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007) (quoting Shiring v. Runyon, 90 F.3d 827, 830-31 (3d Cir. 1996)).  Under both statutes, "the substantive standards for determining liability are the same."  Antol v. Perry, 82 F.3d 1291, 1299 (3d Cir. 1996) (quoting McDonald v. Pa. Dep't of Pub. Welfare, 62 F.3d 92, 95 (3d Cir. 1995)); see 29 U.S.C. § 791(g); see also Wishkin, 476 F.3d at 184 ("The Rehabilitation Act expressly makes the standards set forth in the 1990 Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., applicable to federal employers . . . .").[7]  Plaintiffs suing under § 501 of the RA must "exhaust administrative remedies" before suing an employer.  Freed v. Conrail, 201 F.3d 188, 191 (3d Cir. 2000).

### A.  Failure to Exhaust Administrative Remedies

Federal regulations require plaintiffs to contact the Equal Employment Opportunity Commission (EEOC) within 45 days of the events which they allege to

---

[7] The court notes that the ADA Amendments Act ("ADAAA") of 2008 made changes to both the ADA and the RA.  See Pub. L. No. 110-325.  The effective date of the ADAAA, however, was January 1, 2009, id., after the events at issue in this case.

8

be discriminatory. 29 C.F.R. § 1614.105(a). A plaintiff who does not do so in a timely manner will be barred from suit, unless he or she can establish a justification for bypassing the exhaustion requirement, such as waiver, estoppel, tolling, or futility. See Wilson v. MVM, Inc., 745 F.3d 166, 174-75 (3d Cir. 2007). Defendant asserts that each denial of one of plaintiff's requests for an accommodation[8] was an act after which plaintiff had a 45-day window to contact an EEO counselor. Plaintiff failed to contact the EEOC within 45 days of some of these events; therefore, defendant argues, plaintiff failed to timely exhaust the administrative remedies for her claim. Plaintiff argues that defendant has waived the defense of failure to exhaust because the VA never contested the findings of the ORM and the OEDCA, both of which determined that plaintiff's claims were not time-barred.

In its notice of acceptance of plaintiff's second EEO complaint, the ORM observed that two of the claims raised by plaintiff—specifically, the denial of her request to work from home on September 1, 2005, and the denial of her request for 240 hours of advanced sick leave on September 7, 2005—were untimely "as stated." (Doc. 41, Ex. F at n.1.) However, the ORM explained that these incidents "are part of an overall claim of denial of accommodation" and that "the denial of a reasonable accommodation constitutes a new violation every day the failure exists and

---

[8] Plaintiff complained that the VA denied the following requests for accommodations at the following times. Her request to work from home was denied on September 1, 2005. (Doc. 41, Ex. E.) Her request for advanced sick leave was denied on September 7, 2005. (Id.) Her request to be carried in LWOP status was denied on October 1, 2005. (Id.) Finally, her request to participate in the leave donation program was denied on October 19, 2005. (Id.)

therefore is of a continuing nature." (Id.) Thus, the ORM found plaintiff's claim "acceptable for investigation and further processing." (Id. at 1.) The OEDCA explicitly affirmed the ORM's decision to accept all of the claims. (Doc. 41, Ex. G at n.2.) It reasoned that these incidents "are part of a harassment and hostile work environment claim" and that "[a] complaint alleging a hostile work environment will not be time barred so long as all the acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the filing period." (Id.)

Plaintiff contends that the VA cannot now "defend against a civil complaint by arguing that the administrative complaint was untimely." (Doc. 39 at 8.) There is a dearth of Third Circuit precedent on this issue. Other courts of appeal which have analyzed this issue have uniformly concurred with plaintiff's position, and the court is persuaded by their *ratio decidendi*. Specifically, these courts have held that when an agency finds that a complaint is not time-barred, or when it fails to object to such an EEOC finding, it waives objections to the complaint's timeliness.[9] See Bruce, 314 F.3d at 74 ("An agency waives a timeliness objection by making an express finding that the complaint was timely or failing to appeal an EEOC determination of timeliness."); Briones, 101 F.3d at 291("[A] governmental agency defendant may not have a 'second bite at the apple' by arguing lack of timely filing

---

[9] Timeliness requirements are subject to waiver, estoppel, and tolling. See Bruce v. U.S. Dep't of Justice, 314 F.3d 71, 74 (2d Cir. 2002); Briones v. Runyon, 101 F.3d 287, 291 (2d Cir. 1996); Henderson v. U.S. Veterans Admin., 790 F.2d 436, 440-41 (5th Cir. 1986).

in federal court after failing to challenge an EEOC determination that the complaint was timely filed."); <u>Girard v. Rubin</u>, 62 F.3d 1244, 1247 (9th Cir. 1995) ("The [agency] neither appealed nor refused to proceed . . . .  Because [the timeliness] issue has already been resolved against it by a binding decision of the EEOC, the [agency] may not now raise the argument that it did not waive the timeliness argument."); <u>Munoz v. Aldridge</u>, 894 F.2d 1489, 1495 (5th Cir. 1990) ("If an agency makes a specific finding during the administrative process that the administrative complaint was timely, it cannot later defend against a civil complaint by arguing that the administrative complaint was untimely.") (citing <u>Henderson</u>, 790 F.2d at 440-41). This holding is consistent with the broader principle that an objection which is not made in administrative proceeding is subsequently waived in a court proceeding. <u>See</u> <u>United States v. L.A. Tucker Truck Lines, Inc.</u>, 344 U.S. 33, 37 (1952) ("[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has the opportunity for correction in order to raise issues reviewable by the courts.").  Therefore, the court finds that defendant has waived its timeliness objection, and the court will deny summary judgment on the issue of exhaustion.

**B.**     **Failure to Establish a *Prima Facie* Case**

To make out a *prima facie* case of discrimination under this Act,[10] a plaintiff

must establish the following:[11] "(1) that he or she has a disability; (2) that he or she

is otherwise qualified to perform the essential functions of the job, with or without

reasonable accommodations by the employer; and (3) that he or she was

nonetheless terminated or otherwise prevented from performing the job." Wishkin,

---

[10] Recognizing that the Rehabilitation Act serves the same purpose as other federal laws prohibiting employment discrimination, the Third Circuit has held that the three step burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793-94 (1973), applies to discrimination claims under the Rehabilitation Act. Wishkin, 476 F.3d at 185. The first step under McDonnell Douglas requires a plaintiff to establish a *prima facie* case of discrimination. See McDonnell Douglas, 411 U.S. at 802. Once the *prima facie* case is established, the burden shifts to the defendant to articulate some "legitimate, nondiscriminatory reason" for the plaintiff's treatment. Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999) (citing McDonnell Douglas, 411 U.S. at 802); Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108 (3d Cir. 1997). The defendant's burden to prove a legitimate non-discriminatory reason is "relatively light." Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1996). The defendant is only required to prove that its actions could have been motivated by the proffered legitimate, nondiscriminatory reason; proof of actual causation is not required. Iadimarco, 190 F.3d at 157. Once the defendant has met its burden, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Jones v. School Dist., 198 F.3d 403, 410 (3d Cir. 1999). The plaintiff may meet this burden by presenting evidence from which a reasonable factfinder could "either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Keller, 130 F.3d at 1108. Defendant's pertinent arguments all go to plaintiff's failure to make out a *prima facie* case; the pending motion does not address the following two steps of the McDonnell Douglas analysis.

[11] The standard for establishing a *prima facie* case is "flexible and must be tailored to fit the specific context in which it is applied." Wishkin, 476 F.3d at 185 (quoting Sarullo v. United States Postal Serv., 352 F.3d 789, 797-98 (3d Cir. 2003) (per curiam)).

476 F.3d at 184-85 (quoting <u>Shiring</u>, 90 F.3d at 831).  Defendant argues that plaintiff

has failed to establish any of the above elements of a *prima facie* case.

### 1.     <u>Failure to Establish that Plaintiff is Disabled</u>

Defendant argues that plaintiff has not established that she is disabled.

There are three ways in which plaintiffs can prove that they have a disability.

Plaintiffs can prove that (1) they have a "physical or mental impairment that

substantially limits one or more of the major life activities of such individual;" or

(2) they have a "record of such impairment;" or (3) they are "regarded as having

such an impairment."  29 C.F.R. § 1630.2(g); 29 U.S.C. § 705(20)(B); 42 U.S.C.

§ 12102(1).  According to defendant, plaintiff has failed under all three of these

options.  For the reasons that follow, the court finds that there are genuine disputes

of material fact regarding whether plaintiff has a disabling impairment or whether

defendant regarded plaintiff as disabled.

### a.     <u>Substantial Limitation of a Major Life Activity</u>

Defendant asserts that plaintiff has failed to prove that her physical

impairments substantially limit one or more major life activities.  Plaintiff claims

that the side effects of her cancer treatment have limited her ability to engage in

various activities, including driving, certain manual tasks (e.g., vacuuming, doing

laundry, and making the bed), working, and walking.  Defendant disputes that

driving and the manual tasks at issue qualify as major life activities.  Defendant also

argues that plaintiff cannot prove that her alleged impairment substantially limits

her capacity to perform manual tasks, work, or walk.  The court will discuss each of

13

these activities and evaluate whether plaintiff is substantially limited with respect to performing them.[12]  The "essence of the inquiry," as the Third Circuit has articulated it, involves "comparing the conditions, manner, or duration under which the average person in the general population can perform the major life activity at issue with those under which an impaired plaintiff must perform."  See Emory v. AstraZeneca Pharms. LP, 401 F.3d 174, 179-80 (3d Cir. 2005) (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 307 (3d Cir. 1999)).

Plaintiff alleges that her ability to drive is substantially limited by the side effects of her cancer treatment.  She testified that leg pain, caused by her cancer treatment medication, prevents her from driving for longer than approximately five minutes.  (Doc. 27, Ex. A at 16.)  Courts have held in numerous cases that driving does not qualify as a major life activity for purposes of the ADA or the RA.  See, e.g., Robinson v. Lockheed Martin Corp., 212 F. App'x 121, 124 (3d Cir. 2007); Sloan v. City of Pittsburgh, 110 F. App'x 207, 212 (3d Cir. 2004); Chenoweth v. Hillsborough County, 250 F.3d 1328, 1329-30 (11th Cir. 2001); Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 643 (2d Cir. 1998).  The Third Circuit has not yet adopted this

---

[12] EEOC guidelines advise that courts consider the following factors in determining whether plaintiff is substantially limited: (1) "[t]he nature and severity of the impairment;" (2) "[t]he duration or expected duration of the impairment;" and (3) "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  29 C.F.R. § 1630.2(j); see also Emory, 401 F.3d at 180.  Accordingly, the court notes that the expected duration of plaintiff's impairment is five years, because the impairment arises from side effects of her cancer treatment medication, which plaintiff began taking as part of a five-year course of drug therapy treatment in 2005.  No permanent or long term impact is expected.  The court discusses the severity of the impairment *infra* at pp. 15-20.

rule as binding precedent; however, the court is persuaded by the non-precedential opinions of the Third Circuit, and of other courts of appeal, that driving does not constitute a major life activity. The court therefore agrees that driving is not a major life activity, and it turns to the other activities at issue in this case.

Plaintiff claims that her impairment substantially limits her capability to care for herself.[13] Specifically, plaintiff testified that activities like vacuuming, laundry, and making the bed are difficult for her and exhaust her. (Doc. 27, Ex. A at 19.) Defendant disputes that these tasks are major life activities. Defendant also argues that plaintiff's evidence is insufficient to create an issue of fact as to whether plaintiff's alleged impairment substantially limits her ability to vacuum, do laundry, or make the bed. With respect to the issue of whether these tasks qualify as major life activities, the court must consider whether "such an activity is necessary for one to live in a healthy or sanitary environment." Marinelli, 216 F.3d at 362-63. The Third Circuit has noted, "[a]lthough the EEOC regulations list 'caring for oneself' as a major life activity, courts interpreting this regulation have held that such relates only to basic activities such as washing dishes and picking up trash." Id. at 362. Making the bed is neither crucial for living in a sanitary environment, nor is it analogous to washing dishes or picking up trash. Therefore, plaintiff's evidence

---

[13] Plaintiff cites her testimony that she is not able to drive in support of her claim that her disability substantially limits the life activity of caring for herself. The court declines to find that an inability to drive supports a finding that the life activity of caring for oneself is substantially limited, because driving is not "necessary for one to live in a healthy or sanitary environment." Marinelli v. City of Erie, 216 F.3d 354, 363 (3d Cir. 2000).

that she doesn't make her bed, because it "takes too much," (see Doc. 27, Ex. A at

19), is not supportive of her disability claim.  See Terrell v. USAir, Inc., 955 F. Supp.

1448, 1453 (M.D. Fla. 1996) (holding that a plaintiff who could not perform various

routine manual tasks, including "properly mak[ing] a bed," without adjustment

nevertheless failed to present a triable issue of fact as to whether she was disabled

under the ADA) (citing Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 (5th Cir.

1995)).  Doing laundry, by contrast, is more accurately described as a "necessary"

task for living in a sanitary environment.  See Cella v. Villanova Univ., No. Civ. A.

01-7181, 2003 WL 329147, at *10 (E.D. Pa. Feb. 12, 2003) ("Such crucial tasks include

those involving personal hygiene . . . and household chores, such as preparing food,

doing laundry, and cleaning up around the house.") (citing Toyota Motor Mfg., Ky.

v. Williams, 534 U.S. 184, 202 (2002)), aff'd, 113 F. App'x 454 (3d Cir. 2004); Philip v.

Ford Motor Co., 328 F.3d 1020, 1025 (8th Cir. 2003) ("The type of evidence most

relevant to establishing a substantial limitation in the major life activity of

performing manual tasks, includes, for example, an individual's ability to do

household chores, bathe, brush one's teeth, prepare meals, do laundry, etc.") (citing

Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 567 (1999)); Hoskins v. Oakland

County Sheriff's Dep't, 227 F.3d 719, 724-25 (6th Cir. 2000) (including "doing

laundry" as a manual task on two lists of examples of "major life activities").

Vacuuming is similarly necessary.  See Marziale v. BP Prods. N. Am., No. 1:05-cv-

741, 2007 WL 4224367, at *5 (S.D. Ohio Nov. 27, 2007) (holding that a plaintiff who

was unable to vacuum or perform other housework established that "she is

16

substantially limited in the major life activity of performing manual tasks"); <u>Pleban</u>

<u>v. Kokowski</u>, No. 1:05-cv-1088, 2006 WL 1983145, at *8 (N.D. Ohio July 12, 2006)

(holding that a plaintiff who "has difficulty" with various tasks, including carrying a

vacuum cleaner, presented sufficient evidence to create a genuine issue of material

fact regarding whether she is substantially limited in a major life activity); <u>Bennett</u>

<u>v. Henderson</u>, 15 F. Supp. 2d 1097, 1101, 1106 (D. Kan. 1998) (holding that a plaintiff

whose listed limitations included "pushing a vacuum cleaner" created a question of

fact as to whether he is substantially limited in any major life activity).  Thus, doing

laundry and vacuuming qualify as the sort of "basic chores" that are necessary for

living in a healthy environment, and defendant's argument to the contrary is

rejected.

Defendant argues that plaintiff's evidence regarding her ability to do

housework is too imprecise to support a jury verdict in her favor, but the court

disagrees.  Plaintiff claims that she experiences pain and fatigues easily as a side

effect of her cancer treatment, and her evidence suggests that her impairment

restricts the conditions, manner, and/or duration under which she can perform the

tasks at issue, as compared to the average person.  Defendant cites <u>Andino v.</u>

<u>Philadelphia Housing Authority</u>, Civ. A. No. 05-2161, 2007 WL 2254427, at *8 (E.D.

Pa. Aug. 6, 2007), in support of the pending motion, but the court "must adjudicate

ADA claims on a case-by-case basis," <u>Marinelli</u>, 216 F.3d at 362, and it is not

convinced that <u>Andino</u> is analogous to the instant case.  Here, plaintiff's claims are

not "unsubstantiated," as the <u>Andino</u> court found.  <u>See</u> 2007 WL 2254427 at *8.  The

17

plaintiff in <u>Andino</u> claimed broadly, for instance, that she "can do almost no manual tasks," but the evidence showed that her abilities were not as limited as her claim implied: "[s]he could make beds, use the vacuum cleaner, . . . drive a borrowed car to work, [and] walk to the grocery store . . . ." <u>Id.</u> at *5. In this case, the evidence of plaintiff's actual limitations—unlike the abilities of the plaintiff in <u>Andino</u>—does not undercut plaintiff's claim. The court must deny summary judgment because a rational jury could reasonably find that, when compared to the average individual, plaintiff's ability to care for herself is substantially limited.

Defendant also asserts that plaintiff has failed to establish that her alleged disability puts a substantial limitation on the major life activity of working. To prove that her impairment substantially limits her from working for a living, plaintiff would have to be unable "to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."[14] 29 C.F.R. § 1630.2(j)(3)(i). The court agrees that plaintiff has not come forward with affirmative evidence on this issue that would suffice to support a verdict in her favor. Plaintiff states only that she would be

_____

[14] In determining whether a plaintiff is unable to perform a class of jobs or a broad range of jobs, the court must consider the following factors: (1) "the geographical area to which the individual has reasonable access," (2) "the job from which the individual has been disqualified because of an impairment," and (3) "the number and type of jobs . . . within th[e] geographical area[] from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.2(j)(3)(ii). The court's conclusion that plaintiff has not come forward with sufficient evidence on this issue is bolstered by plaintiff's failure to present the court with evidence regarding any of these factors.

unable to perform a narrow range of jobs, such as jobs that entail manual labor or require her to stand all day. (Doc. 27, Ex. A at 21.) However, her evidence does not indicate the class or broad range of jobs from which her impairment disqualifies her. In <u>Marinelli</u>, the Third Circuit held that a physician's restriction on an ADA claimant's ability to perform "all super heavy and heavy jobs and all medium, light and sedentary positions requiring bilateral grip or repetitive use of the left extremity" was insufficient for the claimant to avoid judgment as a matter of law, because the restriction did not "indicate . . . the class of jobs (e.g., meatpacker, pilot, chef) from which he is disqualified as a result of his impairment (and resulting restrictions)." 216 F.3d at 364-65. Here, similarly, plaintiff has not identified the range of jobs from which her cancer treatment disqualifies her. This vitiates her claim, insofar as it relates to the major life activity of working.

Finally, plaintiff asserts that the side effects of her cancer treatment limit her ability to walk. Although plaintiff was not able to estimate what distance she is able to walk, or for how much time, her testimony indicates that walking to and from her mailbox at the end of her driveway is "a chore," and that it is "very difficult" for her to walk up and down steps, because of the pain in her feet and legs that her medication causes. (Doc. 27, Ex. A at 16, 18-19.) Plaintiff also testified that by mid-August of 2005, she "could hardly walk." (Doc. 41, Ex. K at 169.) Without disputing that walking is a major life activity, defendant argues that plaintiff has not supplied record evidence that her cancer treatment substantially limits her ability to walk, nor has plaintiff established that there was a limitation on her ability to walk at the

time that defendant required her to return to work.  The court cannot agree.  To the contrary, plaintiff's evidence could support a finding that the effects of her cancer treatment medication "significantly restricted" her ability to walk at the time that the VA engaged in adverse employment actions.[15]  The court will not weigh plaintiff's evidence;[16] it is sufficient to note that the question of plaintiff's ability to walk presents a genuine issue for trial.

In sum, the court finds that genuine issues of material fact exist with respect to whether plaintiff's impairment substantially limits the major life activities of caring for oneself and walking.  The court cannot conclude that a jury trial on these questions would be an empty and unnecessary formality; therefore, summary judgment must be denied.

### b.    Record of Impairment

To have a record of impairment, plaintiff must either have "a history of" an impairment that substantially limits one or more major life activities or she must have "been misclassified as having" the same.  29 C.F.R. § 1630.2(k).  Plaintiff has

---

[15] That plaintiff's primary care provider recommends walking as part of plaintiff's rehabilitation, (see Doc. 27 ¶ 80), does not compel a contrary conclusion. See 29 C.F.R. § 1630.2(j) (defining "substantially limits" to include "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.").

[16] See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

not come forward with evidence giving rise to a disputed issue of material fact with regard to whether she has a "record of" a disability.  In her opposition to the pending motion, plaintiff failed to respond to defendant's argument that plaintiff does not present a "record of" a disability.  Accordingly, that avenue of proof of disability is foreclosed.

### c.      Being Regarded as Having an Impairment

Plaintiff has presented only limited evidence that defendant regarded her as having a disabling impairment.  To prove that she was "regarded as having" a disability, plaintiff can show any of the following: (1) she has an "impairment that does not substantially limit major life activities but is treated by [defendant] as constituting such limitation;" (2) she has an "impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment;" or (3) she has no impairment but she is "treated by [defendant] as having a substantially limiting impairment."  29 C.F.R. § 1630.2(*l*); see also Rinehimer v. Cemcoliff, Inc., 292 F.3d 375, 381 (3d Cir. 2002).  A plaintiff can make such a showing by demonstrating either that "despite having no impairment at all, [defendant] erroneously believed that [plaintiff] had an impairment that substantially limited one or more of her major life activities" or that she "had a non-limiting impairment that [defendant] mistakenly believed substantially limited one or more of her major life activities."  Eshelman v. Agere Sys., 554 F.3d 426, 434 (3d Cir. 2009).  The court must focus on "the reactions and perceptions of the persons

interacting or working" with the plaintiff and not on the plaintiff's "actual abilities." Kelly v. Drexel Univ., 94 F.3d 102, 108-09 (3d Cir. 1996).

Plaintiff asserts that, because her supervisors Flanagan and Corsoro advised her in January and March of 2005 to consider disability retirement, and because the VA permitted her to work from home until August 31, 2005, pursuant to the settlement agreement, defendant regarded her as having a disabling impairment. Defendant notes that plaintiff's evidence fails to address the relevant time period: the time of the adverse employment decision. See Buskrik v. Apollo Metals, 116 F. Supp. 2d 591, 601 (E.D. Pa. 2000) ("The relevant time period for our focus . . . is from the time of [plaintiff's] discharge . . . onward."); aff'd 307 F.3d 160 (3d Cir. 2002). Defendant also asserts that the evidence pertaining to the relevant time shows that, although plaintiff's supervisors were aware of her condition, they did not perceive it as one that substantially limits a major life activity; thus, they did not regard her as disabled. Indeed, they expected plaintiff to return to work on September 1, 2005, with no further accommodation. Although the defendant's arguments are well-reasoned, the court finds that plaintiff's evidence as to whether defendant regarded her as disabled is adequate to present a genuine factual issue for trial; therefore, summary judgment is inappropriate.

## 2. **Failure to Establish that Plaintiff is Qualified**

Defendant argues that plaintiff has failed to show that she is qualified to perform the essential functions of the position. The ADA defines "qualified individual" as one who, "with or without reasonable accommodation, can perform

the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The court finds that there are genuine issues of material fact regarding the essential functions of the position at issue and whether plaintiff can perform them with reasonable accommodations. For instance, defendant claims that "[t]he position required that Plaintiff work 'as a team member, helping the group effort whenever possible.'" (Doc. 27 ¶ 17.) Plaintiff, by contrast, asserts that she "very seldom had to communicate with her supervisor and never met with coworkers except to train[17] them." (Doc. 55 ¶ 18.) The fact that plaintiff successfully worked from home prior to her retirement also undercuts defendant's argument and suggests that working from home might be a reasonable accommodation with which plaintiff could have performed her job duties.[18]

Defendant relies on the statement of plaintiff's medical provider, Physician's Assistant Elizabeth Miller ("Miller"), opining that plaintiff could not return to work as of October 2005, as evidence that plaintiff could not perform the essential functions of her position. Defendant also notes that plaintiff stated on her applications for Social Security and for disability retirement that she cannot perform the full range of duties required of her. This evidence, however, relates to a time period after the VA had already denied various accommodations requested

---

[17] Defendant has not argued that training was an essential function of plaintiff's position.

[18] The court acknowledges that plaintiff's job duties were modified when she worked from home. However, plaintiff has presented evidence suggesting that she could have performed her full range of duties from home.

by plaintiff; thus, it does not support a conclusion that plaintiff would have been unable to fulfill the functions of her position with or without reasonable accommodations at the relevant time.  See 42 U.S.C. § 12111(8) (defining "qualified individual" as one who, "*with or without* reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires") (emphasis added); Turner, 440 F.3d at 611 ("The determination of whether an individual with a disability is qualified is made at the time of the employment decision . . . .").

The court cannot find, as a matter of law, that the evidence on these issues would be inadequate to support a verdict in plaintiff's favor.  Therefore, it must deny defendant's motion for summary judgment.

### 3.    <u>Failure to Establish Constructive Discharge</u>

Plaintiff raises a constructive discharge claim in support of the final element of her *prima facie* case: that, despite her qualifications, she was "terminated or otherwise prevented from performing the job."  Wishkin, 476 F.3d at 185.  To make out a claim of constructive discharge, plaintiff must establish that defendant caused or "knowingly permitted" her working conditions to be so intolerable that "a reasonable person would feel compelled to resign."  Conners v. Chrysler Fin. Corp., 160 F.3d 971, 975 (3d Cir. 1998) (quoting Gray v. York Newspapers, Inc., 957 F.2d 1070, 1082 (3d Cir. 1992)).

Defendant asserts that plaintiff's constructive discharge claim has no merit, for two reasons: first, defendant argues that plaintiff failed to exhaust

administrative remedies with respect to a claim of constructive discharge, and second, defendant insists that plaintiff cannot meet the high burden of proof that applies to a constructive discharge claim when she voluntarily retired. The court is not persuaded. Plaintiff's constructive discharge claim was added during supplemental investigation and addressed in the administrative proceedings. (See Doc. 41, Ex. G.) Accordingly, plaintiff has exhausted administrative remedies regarding this claim. In addition, the court finds that plaintiff's evidence regarding the VA's refusal to provide further accommodation for her impairment after August 31, 2005 could support a jury verdict in her favor. Because a genuine factual dispute exists, summary judgment must be denied.

### C. Defendant's Other Arguments

Defendant argues that plaintiff's claim must fail because she did not seek a reasonable accommodation from the VA, and because she failed to establish that the VA had notice that she sought an accommodation. The court will address these arguments *seriatim*.

### 1. Failure to Seek Reasonable Accommodation

A plaintiff who claims that his or her employer should have provided reasonable accommodation must show that the accommodation at issue is possible. See Turner v. Hershey Chocolate U.S.A., 440 F.3d 604, 614 (3d Cir. 2006). If the plaintiff makes this showing, the burden shifts to the defendant to prove that the requested accommodations "are unreasonable, or would cause an undue hardship on the employer." Id. In the instant case, plaintiff sought various accommodations,

including advance sick leave, leave without pay status, participation in the leave donation program, and permission to work from home. The court will discuss plaintiff's requests for leave first; it will then turn to her request to work from home.

Defendant argues that a request for any type of leave is not a reasonable accommodation where, as in this case, there is no reason to expect that plaintiff will be able "to perform his or her essential job functions <u>in the near future</u>." (Doc. 28 at 31 (quoting <u>Dogmantis v. Capital Blue Cross</u>, 413 F. Supp. 2d 452, 460 (E.D. Pa. 2005) (emphasis in the original) (citing <u>Consoshenti v. Public Serv. Elec. & Gas Co.</u>, 364 F.3d at 135, 151 (3d Cir. 2004)))). Defendant also argues that "[t]he weight of authority in the Third Circuit, as well as other Circuits, clearly establishes that a leave of absence for an indefinite duration is not a reasonable accommodation." (<u>Id.</u> (quoting <u>Dogmantis</u>, 413 F. Supp. 2d at 460 (citing, <u>e.g.</u>, <u>Fogleman v. Greater Hazleton Health Alliance</u>, 122 Fed. Appx. 581, 585 (3d Cir. 2004)))). Plaintiff contends that the side effects from her cancer medication will end in June of 2010, when her five-year course of drug therapy treatment ends. Plaintiff's response is insufficient to establish that a request for 240 hours advanced sick leave, or leave without pay status, or acceptance in the leave donation program could be reasonable. In fact, it suggests the opposite: if defendant granted plaintiff leave, it would not accommodate her impairment, and plaintiff would require leave until June 2010. Accordingly, plaintiff has failed to present sufficient evidence to create a genuine issue of fact as to whether the leave plaintiff requested was a possible accommodation, and not unreasonable, and the court concludes that it was not.

26

Plaintiff contends that her request to work from home was entirely reasonable because the federal government encourages "telework." Indeed, plaintiff provides a report on "telework," in support of her argument that permission to work from home was possible. She also relies on her past performance while working at home, which she posits as a successful endeavor. Plaintiff asserts that she could fulfill all essential functions of her position from home. Defendant disputes that plaintiff could perform her full range of duties outside the office and claims that allowing plaintiff to work from home would be an undue hardship. Defendant also argues that plaintiff failed to prove that the accommodation would be efficacious or proportional to its costs. Finally, defendant argues that plaintiff's "telework" study does not provide enough information about teleworking to support plaintiff's claim. As explained above, there are genuine issues of material fact regarding the essential functions of plaintiff's job and whether she could perform them from home. Furthermore, the Third Circuit has held that, generally, "[t]he question of whether a proposed accommodation is reasonable is a question of fact." Turner, 440 F.3d at 611 n.4 (quoting Buskirk v. Apollo Metals, 307 F.3d 160, 170 (3d Cir. 2002); citing Skerski v. Time Warner Cable Co., 257 F.3d 273, 286 (3d Cir. 2001)). The court is therefore unable to conclude as a matter of law whether working from home would or would not be a reasonable accommodation, and summary judgment is inappropriate.

### 2.    **Failure to Establish that Defendant Had Notice that Plaintiff Sought an Accommodation**

An employer must have notice that an employee seeks an accommodation. See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 312-13 (3d Cir. 1999). Defendant alleges that plaintiff caused the interactive process between herself and her employer to break down, by failing to provide defendant with medical documentation that she needed a new accommodation because of the side effects of her cancer medication. Plaintiff asserts that defendant caused the interactive process to fail, by ignoring her verbal request to continue working from home as a an accommodation for the side effects of her new cancer medication and by ignoring a letter, dated September 2, 2005, in which Physician's Assistant Frank C. Wilson opined that plaintiff was not able to return to the office. Plaintiff also argues that, if the VA doubted plaintiff's need for continuing accommodation, it had a right under Article 18 of the Collective Bargaining Agreement to ask her to submit to a Fitness for Duty Examination, but it never did. The evidence on these factual issues could support a jury verdict in either party's favor. The court concludes that genuine issues of material fact exist on the question of whether plaintiff caused the interactive process to break down; therefore, summary judgment is inappropriate.

## IV. __Conclusion__

Defendant's arguments that plaintiff failed to exhaust administrative remedies and that plaintiff cannot make out a *prima facie* case of discrimination under the RA both fail. Defendant has waived the exhaustion issue by failing to object to the ORM's finding of timeliness, which was affirmed by the OEDCA, in the course of the administrative process. Additionally, genuine disputes over issues of material fact prevent the court from concluding as a matter of law that plaintiff cannot make out her *prima facie* case. Therefore, the court will deny defendant's motion for summary judgment.

An appropriate order follows.

        S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:       October 14, 2009

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELIZABETH PINEGAR,** | : | **CIVIL ACTION NO. 1:07-CV-0313** |
| **Plaintiff** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **ERIC K. SHINSEKI,** | : | |
| **Defendant** | : | |

## <u>ORDER</u>

AND NOW, this 14th day of October, 2009, upon consideration of defendants'

motion for summary judgment (Doc. 26), and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

   1.    The motion for summary judgment is DENIED.

   2.    A revised pretrial and trial schedule shall issue by future order of
         court.

                                        S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge